UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

JOSHUA WAGNER, individually and on
behalf of the Hess Corporation Employees'
Savings Plan, and all others similarly
situated,

      Plaintiff,

v.                                                    No. 6:24-CV-004-H

HESS CORPORATION, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

In this ERISA putative class action, the plaintiff alleges that the defendants breached

their fiduciary duties by selecting excessively expensive investment options for employees'

retirement plans. The plaintiff asserts that the defendants should have replaced certain

investment options with similar investments that had lower fees. In addition, the plaintiff

alleges that the Hess Corporation is liable for failing to monitor the performance of the Hess

Corporation Investment Committee.

Before the Court are two motions. First, the defendants moved to dismiss (Dkt. No.

28) the plaintiff's second amended complaint for failure to state a claim and lack of standing

to pursue injunctive relief. Second, the plaintiff seeks leave to file a third amended

complaint (Dkt. No. 39), which the defendants argue is futile for the same reasons presented

in the motion to dismiss (*see* Dkt. No. 42). The Court grants the motion to amend (Dkt. No.

39). In addition, the Court considers the merits of the defendants' motion to dismiss as to

the third amended complaint and grants in part and denies in part the motion to dismiss

(Dkt. No. 28).

1.    **Factual and Procedural Background**

    A.    **Factual Background**

The Court takes the pertinent factual allegations from the plaintiff's proposed third amended complaint. *See Villareal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016). The plaintiff, Joshua Wagner, is a former employee of the Hess Corporation, where he worked between August 2018 and November 2021. Dkt. No. 39 at 66. The Hess Corporation is a large energy company that produces and sells crude oil and natural gas. *Id.* at 67. The Hess Corporation sponsors the Hess Corporation Employees' Savings Plan (the Plan), which—with assets totaling over $1 billion in 2023—is one of the largest 401(k) retirement plans in the United States. *Id.* at 62, 65. The plaintiff was a participant in the Plan until 2022, when he took his last distribution from the Plan. *Id.* at 66.

The Hess Corporation delegated to the Hess Corporation Investment Committee (Investment Committee) the responsibility of selecting and monitoring the Plan's investments. *Id.* at 67. The CEO of the Hess Corporation appointed and has the power to remove the members of the Investment Committee. *Id.* at 68. The Investment Committee selected a menu of investment options for the Plan. *Id.* at 73. Plan participants could then invest the assets in their individual accounts by selecting from those options. *Id.* One important feature of any investment is its expense ratio. *Id.* at 74. Any given investment provider charges a fee called an "expense ratio," which is the percentage of the assets under management that the provider takes as a fee. *Id.* Because the money charged as a fee would otherwise have been invested, a higher expense ratio leads to lower returns, all other things being equal. *See id.*

Plan administrators are subject to fiduciary duties under ERISA. *Id.* at 69. The plaintiff alleges that the defendants breached their fiduciary duty of prudence by failing to replace certain investments selected for the Plan with indistinguishable or similar investments that had lower expense ratios. *Id.* at 76, 78. Because of those breaches, excessive fees caused millions of dollars in losses to the Plan's participants. *Id.* at 78–79.

The plaintiff asserts that three particular categories of investments were overpriced and should have been replaced. First, the Plan offered a series of T. Rowe Price target-date funds. *Id.* at 79. Target-date funds are "a class of funds that periodically rebalance asset class weights" to "gradually shift to a more conservative profile over time so as to minimize risk when the target date approaches." *Id.* For example, if an employee plans to retire in 2060, she could choose to invest her 401(k) in a 2060 target-date fund. The target-date funds chosen by the Plan were structured as mutual funds. *Id.* at 79, 83.

T. Rowe Price also offered target-date funds in a collective-investment trust vehicle (also called a collective trust). *Id.* at 81–82. Collective trusts differ in structure, as well as in regulatory and disclosure requirements, from mutual funds. *Id.* at 80. These trusts are not available to the general public and may have lower fees than mutual funds. *Id.* T. Rowe Price described the target-date collective-trusts as having "the same portfolio management team, glidepath, subasset-class exposure, tactical allocation overlay and underlying investments" as their mutual-fund alternatives. *Id.* at 82. In other words, the collective trusts have the same underlying investment makeup, risk, strategy, and objectives as their mutual-fund counterparts. *Id.*

The plaintiff asserts that the defendants should have switched from mutual funds to collective trusts, as the Investment Committee did beginning in 2018 in two other retirement

plans sponsored by the Hess Corporation. *Id.* at 81–82, 89. Between 2020 and 2023, the T. Rowe Price target-date collective trusts had expense ratios ranging from 0.01% to 0.09% lower than the challenged target-date mutual funds. *See id.* at 83–87.

Second, the Plan offered certain "single asset class investment options" (the other mutual funds) that the plaintiff asserts the Investment Committee should have switched for other comparable, lower-cost funds. *Id.* at 90. The plaintiff identified the comparator funds with an unidentified "industry[-]recognized software program that uses quantitative methods . . . to find funds that are highly similar to the fund being analyzed." *Id.* at 95. In addition, the plaintiff's comparators share the same Morningstar category—a classification assigned by a financial-services provider that groups funds together based on similar holdings or investment styles. *Id.* at 95–96. The plaintiff's comparator funds have expense ratios ranging from 0.11% to 0.97% lower than these challenged funds. *See id.* at 90–94.

Third, the Plan selected certain Vanguard index funds—funds that track a market index such as the S&P 500. *Id.* at 99. The plaintiff asserts that other investment companies offer comparable funds tracking the same indexes but with lower expense ratios. *Id.* These comparator index funds have expense ratios ranging from 0.005% to 0.03% lower than the Plan's challenged index funds. *See id.* at 99–101.

### B.    Procedural Background

The defendants moved to dismiss the second amended complaint under Federal Rule of Civil Procedure 12(b)(1) and (b)(6), asserting that the plaintiff lacks standing to pursue injunctive relief and that the complaint fails to state a claim. Dkt. No. 28. The plaintiff responded (Dkt. No. 33), and the defendants replied (Dkt. No. 34).

After the briefing on the motion to dismiss was complete, the plaintiff moved for leave to file a third amended complaint. Dkt. No. 39. The plaintiff seeks leave to amend the complaint to add factual allegations that the defendants' document productions revealed and that were not previously available to the plaintiff. *See generally id.* The defendants responded to the motion to amend (Dkt. No. 42), and the plaintiff replied (Dkt. No. 47). The motion to dismiss and the motion for leave to amend are both ripe.

## 2. Standards of Review

### A. Motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)

A party may challenge a court's subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). When considering such a motion, "the court may find a plausible set of facts by considering any of the following: '(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The plaintiff, as the party asserting jurisdiction, "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161. Thus, at the pleading stage, the plaintiff must "allege a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012).

### B. Motion to amend the complaint

When the deadline to amend the pleadings set forth by a scheduling order has expired, a movant must demonstrate "good case" to extend the deadline. *S&W Enters., LLC v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003); *see also* Fed. R. Civ. P.

16(b)(4).  Under Federal Rule of Civil Procedure 16(b), whether a movant has shown "good cause" depends on four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S&W Enters.*, 315 F.3d at 536 (cleaned up) (quoting *Reliance Ins. Co. v. La. Land Exploration Co.*, 100 F.3d 253, 257 (5th Cir. 1997)).

If a court finds good cause to amend the scheduling order under Rule 16(b), it should allow the movant to amend his pleadings if "justice so requires." *S&W Enters.*, 315 F.3d at 535; *see also* Fed. R. Civ. P. 15(a)(2).  Under Rule 15, leave to amend should be freely given. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### C.     Motion to dismiss for failure to state a claim under Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Therefore, a plaintiff must allege sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  A plaintiff's claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).  If a complaint "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up) (quoting *Twombly*, 550 U.S. at 557).

Defendants can challenge the sufficiency of a complaint by moving to dismiss under Federal Rule of Civil Procedure 12(b)(6).  In resolving a motion to dismiss, a court must "accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff."  *Richardson v. Axion Logistics, LLC*, 780 F.3d 304, 306 (5th Cir. 2015) (quoting *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 146 (5th Cir. 2010)).  However, this tenet does not extend to legal conclusions.  *Iqbal*, 556 U.S. at 678.  Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

### 3.    Analysis

### A.    The Court grants the motion to dismiss the request for injunctive relief because plaintiff lacks standing to seek that relief.

The defendants argue that, because the plaintiff is a former (not current) participant of the Plan, he lacks standing to seek an order enjoining the defendants from committing further ERISA violations.  *See* Dkt. No. 28 at 29–30.  The plaintiff is a former participant of the Plan and does not have any further distributions to receive from the Plan.  Dkt. No. 39 at 66 (alleging that the plaintiff took "his last distribution out of the Plan on or around June 27, 2022").

"[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).  "These standing requirements are equally applicable in class actions," and as a result, the named plaintiffs must themselves have standing for each claim and form of relief sought.  *Singh v. RadioShack Corp.*, 882 F.3d 137, 151 (5th Cir. 2018).

– 7 –

Here, the plaintiff no longer participates in the Plan and will not receive any future payments from the Plan. Dkt. No. 39 at 66. And there is no allegation that the plaintiff expects to rejoin the Plan in the future. The plaintiff thus faces no threat of an imminent injury. *See Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) ("For a threatened future injury to satisfy the imminence requirement, there must be at least a 'substantial risk' that the injury will occur.") (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). And any injunctive relief the Court orders would not redress any injury suffered by the plaintiff. *See id.* ("[P]laintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury."). The Court therefore concludes that the plaintiff lacks standing to pursue injunctive relief.

Although the defendants have not challenged any other aspect of the plaintiff's standing, the Court determines that the plaintiff otherwise has standing to pursue his claims. *See In re Gee*, 941 F.3d 153, 159 (5th Cir. 2019) (noting the federal courts' independent obligation to assess standing). The plaintiff alleges that the alleged breaches of fiduciary duty by the defendants caused "monetary injury," namely, "diminution of the value of [the plaintiff's] retirement assets." Dkt. No. 39 at 66. That is, the plaintiff alleges he was paid less from his share of the Plan than he would have but for the defendants' breaches, and he would like the defendants to compensate him by paying the difference. *See id.* at 110. In addition, the plaintiff owned in his retirement account each type of investment for which he alleges the defendants utilized an imprudent process in selecting, so he has a personal interest in each variety of alleged breach. *Id.* at 66 n.1; *see also Albert v. Oshkosh Corp.*, 47 F.4th 570, 578 (7th Cir. 2022) (holding that the plaintiff had Article III standing where he

– 8 –

invested in a portion of the category of challenged funds). This kind of "'lost investment income' is a 'concrete' and redressable injury for the purposes of standing." *Ortiz v. Am. Airlines, Inc.*, 5 F.4th 622, 629 (5th Cir. 2021) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016)). Accordingly, the Court determines that the plaintiff has standing to pursue his claims at this stage, except the Court dismisses the request for injunctive relief for lack of standing.

### B.    The Court grants the motion for leave to amend.

The Court finds that the requirements of both Federal Rules of Civil Procedure 16 and 15 are met here. Thus, the Court grants the motion to amend and allows the third amended complaint.

### i.    Good cause exists to permit amendment under Rule 16(b).

Whether the plaintiff may amend the complaint depends on whether there is good cause to extend the deadline for amending pleadings set forth in the Court's scheduling order. *See S&W Enters.*, 315 F.3d at 536. Here, the scheduling order gave the plaintiff until September 6, 2024, to amend the complaint. Dkt. No. 27 at 3. Consistent with Rule 16(b), it also carved out an exception for amendments after the deadline "with leave of court, upon a showing of good cause." *Id.* The Court finds that the balance of Rule 16's good-cause factors weigh in favor of extending the deadline for the plaintiff to amend the complaint.

The first factor concerns the movant's explanation for his failure to timely move for leave to amend. *S&W Enters.*, 315 F.3d at 536. Courts often find that the plaintiff has provided a sufficient explanation for an untimely motion for leave to amend when the movant learned of new facts through discovery after the deadline for amending the

complaint.  *See, e.g.*, *Thomas v. St. Joseph Health Sys.*, No. 5:20-CV-028, 2022 WL 4349319, at
*6 (N.D. Tex. Sept. 19, 2022).

Here, the plaintiff asserts that the document production on September 6 showed that
the same Investment Committee that administered the Plan (1) switched from mutual funds
to collective trusts in other company plans, (2) compared the Plan's other mutual funds to
proposed funds that the plaintiff asserts are comparators, and (3) relied on the Morningstar
categories to compare investment options for the Plan.  Dkt. No. 39 at 5–6.  The plaintiff
seeks to add allegations to include these new facts.  *Id.* at 6.  The defendants argue that
"certain of the information" that the plaintiff seeks to add—that Hess's various pension
plans used investment trusts—has been available to the plaintiff "for years" because Hess's
pension plans' investments are publicly disclosed.  Dkt. No. 42 at 8–9 (emphasis omitted).
But as the plaintiff argues, the publicly filed documents did not disclose that the same
Investment Committee that oversees investment decisions for the Plan also oversees its
pension plans.  Dkt. No. 47 at 2.  In addition, the defendants do not claim that any other
information in the production made on September 6 was previously available to the
plaintiff.  Dkt. No. 42 at 8.  Moreover, the plaintiff moved for leave to amend within a
reasonable amount of time after the production, which consisted of approximately 2,800
pages of documents.  Dkt. No. 39 at 8.  Because the plaintiff seeks to add facts not
previously in the plaintiff's possession, the Court finds that this factor weighs in favor of a
finding of good cause.

The second factor concerns the importance of the amendment to the litigation.  *S&W
Enters.*, 315 F.3d at 536.  An amendment may be important when it bolsters the factual
support for a claim or where the amendment would preclude dismissal of a claim.  *See, e.g.*,

*Repass v. TNT Crane & Rigging, Inc.*, No. 7:18-CV-107, 2020 WL 13094016, at *2 (W.D. Tex. Mar. 3, 2020).

Here, the amendments provide additional facts to support the plaintiff's claim that the defendants breached their fiduciary duties by choosing investment options with higher fees than comparable alternatives. *See* Dkt. No. 39 at 6. Although the amendments do not preclude dismissal of the portions of the plaintiff's claims that are deficient (*see infra* Analysis § 3.C), they provide additional factual support for the portions that survive. Dkt. No. 39 at 6. This factors thus cuts both ways, so the Court weighs this factor neutrally.

The third factor concerns the potential prejudice to the nonmovant if the amendment is permitted. *S&W Enters.*, 315 F.3d at 536. Permitting amendments may prejudice the nonmovant "by prolonging the litigation, delaying the resolution of the case, and requiring that party to file new dispositive motions." *Shaunfield v. Experian Info. Sols., Inc.*, No. 3:12-CV-4686, 2013 WL 12354439, at *6 (N.D. Tex. Dec. 20, 2013) (citation omitted). A court will not find prejudice, however, where the proposed amendments do not add claims or theories for which the defendants have not already prepared. *Tex. Indigenous Council v. Simpkins*, 544 F. App'x 418, 421 (5th Cir. 2013).

Here, the proposed amendments add factual support for pre-existing claims rather than adding new claims, theories, or parties. Further, because the defendants' motion to dismiss applies with equal force to the proposed amended complaint and the Court may consider the motion as applied to the proposed amended pleading (*see infra* Analysis § 3.C), there is no need to extend other pending deadlines in this case and no need for the defendants to re-file their pending motion to dismiss. Accordingly, the Court determines that any prejudice to the defendants is minimal.

The final factor concerns the availability of a continuance to cure any prejudice. *S&W Enters.*, 315 F.3d at 536. Here, this factor is inapplicable, given that permitting the third amended complaint would not cause any prejudice to the defendants.

In sum, three factors weigh in favor of the plaintiff, and one factor weighs neutrally. The Court thus finds that good cause exists for the amendment under Rule 16(b).

### ii.    Good cause exists to permit amendment under Rule 15(a).

Because there is good cause to modify the scheduling order, the Court should freely grant leave as "justice so requires." Fed. R. Civ. P. 15(a)(2). In deciding whether to grant leave under Rule 15(a), district courts consider the following five factors: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment." *Rosenzweig*, 332 F.3d at 864 (5th Cir. 2003) (quoting *Foman*, 371 U.S. at 182). The defendants do not address Rule 15(a)'s standard in their opposition to the motion for leave to amend beyond the fifth factor, futility. *See* Dkt. No. 42 at 8–15.

Here, the plaintiff has not unduly delayed filing the proposed amendments, as the plaintiff sought leave to amend within weeks after receiving the defendants' first production of discovery on which the amendments are based. Dkt. No. 39 at 2. Similarly, there is no suggestion of bad faith or dilatory motive on the plaintiff's part. The plaintiff seeks leave to file a third amended complaint, so the plaintiff has previously had two opportunities to cure deficiencies in the complaint. *See generally id.* However, the amendments add only factual information that was not in the plaintiff's possession until after the defendants produced

– 12 –

discovery.  In addition, the defendants will not face prejudice from permitting the amendment.  *See supra* Analysis § 3.B.i.

Finally, for the reasons explained *infra* Analysis § 3.C, the amendments are not wholly futile.  Because these factors weigh in favor of permitting amendment (except for the portions that would be futile), the Court determines that there is good cause for granting the plaintiff leave to file the third amended complaint.

### C.    The Court grants in part and denies in part the motion to dismiss.

For the reasons explained below, the Court denies the motion to dismiss the prudence claim and the claim for failure to monitor as those claims relate to the target-date funds.  However, the Court otherwise grants the motion to dismiss the prudence claim and the claim for failure to monitor.  The Court grants the motion to dismiss the claim for co-fiduciary liability.  The claims that do not survive are dismissed with prejudice.

### i.    The Court considers the motion to dismiss as applied to the third amended complaint.

Although granting a motion for leave to amend may moot a pending motion to dismiss directed at the prior complaint, "the court may nevertheless treat [the] defendant's motion [to dismiss] as directed to the . . . amended complaint because the defects in" the prior complaint "reappear in" the amended complaint.  *Davis v. Dallas County*, 541 F. Supp. 2d 844, 848 (N.D. Tex. 2008) (quoting *Holmes v. Nat'l Football League*, 939 F. Supp. 517, 523 n.7 (N.D. Tex. 1996)); *see also* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1476 (3d ed. 2024) ("If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.").  In addition, in determining whether to grant leave to amend under Federal Rule of Civil Procedure 15(a), a court may consider whether

an amendment would be futile. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000). Futility means that "the amended complaint would fail to state a claim upon which relief could be granted." *Id.* at 873. Courts accordingly apply the Rule 12(b)(6) standard when considering futility of an amendment. *Id.*

The Court considers the pending motion to dismiss as applied to the third amended complaint for two reasons. First, the 12(b)(6) arguments in the motion to dismiss are the same arguments that the Court considers in determining whether the amendments are futile. Second, the same alleged defects in the second amended complaint remain in the third amended complaint. The amendments supplement the factual allegations as to one of the plaintiff's claims rather than adding or removing claims or significantly amending the complaint's allegations. Both parties, in their briefing on the motion to amend, make arguments as to why the pending motion to dismiss should or should not be granted as to the third amended complaint. Dkt. Nos. 42 at 10–15; 47 at 3–10. Accordingly, the Court considers the pending motion to dismiss as being addressed to the third amended complaint.

### ii. The Court dismisses in part the claim that the defendants breached their fiduciary duty of prudence.

A plan fiduciary must perform its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." *See* 29 U.S.C. § 1104(a)(1). In the ERISA context, the duty of prudence requires a fiduciary to "properly monitor investments and remove imprudent ones." *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015). Properly monitoring investments includes ensuring that the Plan's investments could not be replaced with identical investments with lower fees. *See, e.g.*, *Forman v. TriHealth, Inc.*, 40 F.4th 443, 449 (6th Cir. 2022).

In the context of ERISA putative class actions, 12(b)(6) motions are an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). Courts are therefore instructed to undertake "careful, context-sensitive scrutiny of a complaint's allegations" to "divide the plausible sheep from the meritless goats." *Id.* Here, the complaint alleges that the defendants breached their duty of prudence by selecting investment options for the Plan with unreasonably excessive fees. *See* Dkt. No. 39 at 107. Specifically, the plaintiff asserts that for three different types of investments selected for the Plan, the Investment Committee should have selected different, comparable investments with lower expense ratios. *See id.* at 79–90 (target-date mutual funds), 90–99 (other mutual funds), 99–102 (index funds).

> **a.    The Court declines to dismiss the prudence claim with respect to the target-date funds.**

The plaintiff first alleges that the defendants should have replaced certain target-date mutual funds offered by T. Rowe Price with collective trusts, which are also offered by T. Rowe Price. *See id.* at 82. The defendants make three arguments as to why the allegations regarding the target-date fund are insufficient. The Court rejects each argument and finds that the plaintiff has stated a claim with respect to the target-date funds.

First, the defendants argue that the target-date collective trusts are not a "meaningful benchmark" for the target-date mutual funds. Dkt. No. 28 at 13–16. On a motion to dismiss, to plausibly allege that a prudent fiduciary would have selected a different investment, the plaintiff must provide "a sound basis for comparison," also referred to as a "meaningful benchmark." *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1147 (10th Cir. 2023) (emphasis omitted); *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1167 (6th Cir. 2022); *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018); *see also Perkins v. United*

*Surgical Partners Int'l, Inc.*, No. 23-10375, 2024 WL 1574342, at *3 (5th Cir. Apr. 11, 2024) (discussing comparator allegations). A plaintiff may not allege merely that alternatives with cheaper fees exist in the marketplace, as investments have many important features other than fees. *See Matney*, 80 F.4th at 1148–49; *Meiners*, 898 F.3d at 822; *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009). Instead, the plaintiff must plead sufficient facts to show that the competing investments are actually comparable. *See, e.g.*, *Matney*, 80 F.4th at 1149; *Meiners*, 898 F.3d at 822.

The plaintiff has pled a meaningful benchmark because the plaintiff has alleged sufficient factual information regarding the aims, risks, rewards, and costs of the mutual funds versus the collective trusts. The Tenth Circuit recently considered similar allegations that the defendant fiduciaries should have replaced mutual funds with collective trusts. *Matney*, 80 F.4th at 1153. The court held that the plaintiff's allegations—simply that the "investments in the collective trusts are identical to those held by the mutual fund, except they cost less"—were deficient to plead a meaningful benchmark. *Id.* As the court noted, to determine whether two investments are similar, courts need specific "information about the goals or strategies of the various mutual funds" to determine whether investments "have different aims, different risks, and different potential rewards." *Id.* (quoting *Smith*, 37 F.4th at 1166). In a recent, though unpublished, opinion, the Fifth Circuit adopted the same logic. *See Perkins*, 2024 WL 1574342, at *3. There, the Fifth Circuit reversed the dismissal of the plaintiff's complaint, determining that the plaintiff stated a claim because the complaint alleged facts supporting that the retail institutional shares at issue could not be differentiated by having "(1) a potential for higher return, (2) lower financial risk, (3) more services offered, (4) or greater management flexibility." *Id.*

Here, the plaintiff alleges that a T. Rowe Price representative stated that the target-date mutual funds and collective trusts have "the same portfolio management team, glidepath, subasset-class exposure, tactical allocation overlay and underlying investments." Dkt. No. 39 at 82.  Thus, the plaintiff asserts, the collective trusts and mutual funds are effectively "the same investment in a different wrapper" with a lower expense ratio.  *Id.*  The complaint notes some differences in applicable regulatory requirements—specifically, mutual funds are a retail product and therefore subject to certain regulatory schemes, registered with the Securities and Exchange Commission, and must offer detailed public disclosures.  *Id.* at 80.  By contrast, collective trusts are not publicly available, are regulated by the Comptroller, and have "simple disclosure requirements" and cannot issue prospectuses.  *Id.*  While there is a difference in applicable regulatory schemes, the complaint goes beyond alleging that the collective trusts are merely cheaper than the target-date funds.  Instead, it pleads facts that, when taken as true, allege that the two investments cannot be differentiated, from the plaintiff's perspective, by having different return potential, risk profiles, management, or strategy.  *Perkins*, 2024 WL 1574342, at *3; *see also Matney*, 80 F.4th at 1153 (noting that there must be sufficient factual allegations to "establish the[] comparability" of different investments).

The defendants argue that the plaintiff's allegations are insufficient primarily because "[c]ourts have overwhelmingly rejected [collective trusts] as comparators for mutual funds." Dkt. No. 28 at 14.  In other words, investment trusts and mutual funds are so categorically different—due to, in the abstract, differences in the asset mixes underlying the investments, governing regulatory schemes, and disclosure and registration requirements—such that the two instruments are "fundamentally different and incomparable."  *Id.* at 14–16.

The Court rejects the defendants' position. It may be that discovery shows that, under the circumstances presented here, the regulatory differences justified retaining the mutual funds rather than switching to the collective trusts. However, the complaint's allegations must be assumed to be true and viewed in the light most favorable to the plaintiff's at this procedural stage, and the plaintiff has alleged facts regarding the identity of underlying investments, strategies, objectives, risk profiles, and management team that, taken as true, plead that the investment trusts are comparable to the mutual funds. *See Matney*, 80 F.4th at 1153; *see also Davis v. Salesforce.com, Inc.*, No. 21-15867, 2022 WL 1055557, at *2 (9th Cir. Apr. 8, 2022) ("Whether the different regulatory regimes governing mutual funds and collective investment trusts justified defendants' delay in making the switch earlier is itself a factual issue that cannot be resolved at the pleading stage.").

Second, the defendants argue that the fee differentials between the target-date funds and collective trusts are too immaterial to state a claim. Here, the defendants assert that the differences in the expense ratios between the instruments—between 1 and 9 basis points— are too small to support a claim that the defendants breached the duty of prudence. Dkt. No. 28 at 17–18. A fiduciary is not required, the defendants argue, "to scour the market to find and offer the cheapest possible fund." *Hecker*, 556 F.3d at 586; *see also Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 486 (8th Cir. 2020) (stating that fiduciaries are not "required to pick the *lowest*-cost fund, particularly when the expense-ratio differences are small"); Dkt. No. 28 at 17–18.

On the other hand, as the plaintiff argues, if a comparator is identical in its underlying composition, then the "selection of a more expensive class of fund *guarantees* worse returns." *Forman*, 40 F.4th at 451. In *Forman*, for example, the plaintiff alleged that

– 18 –

the same mutual fund had two different classes of shares—more expensive retail shares (available to the public) and cheaper institutional shares (available only to institutional investors)—such that failure to offer the cheaper version of the same investment could be imprudent. *Id.* at 450. And in *Perkins*, the Fifth Circuit adopted the same view that because the retail shares and institutional shares at issue were the same in material respects, the plaintiffs stated a claim that the defendants acted imprudently by offering only the retail shares. *See Perkins*, 2024 WL 1574342, at *3.

The target-date mutual funds and collective trusts here are not identical in all features, as they differ in applicable regulatory schemes. Dkt. No. 39 at 80, 82. But were such identity necessary, then collective trusts could "never be considered comparable to mutual funds." *Matney*, 80 F.4th at 1153 (emphasis omitted) (rejecting that position). Instead, there must be sufficient factual allegations to support that a proposed comparator is "meaningfully comparable" to a plan's chosen fund—and here, there are, so the plaintiff's allegations succeed. *Id.; see also Salesforce.com, Inc.*, 2022 WL 1055557, at *2 (reversing dismissal of a prudence claim because whether regulatory differences justified the retention of mutual funds over collective trusts could not be resolved without factual development). The plaintiff alleges that the mutual funds and the collective trusts have the same investments, management, strategies, and risks, and differ only in regulatory requirements. Dkt. No. 39 at 80, 82. And the plaintiff also alleges that the defendants were cognizant of the possibility of switching investment vehicles, as the Investment Committee switched nearly all of its mutual funds into collective trusts in a different retirement plan. *Id.* at 89.

At the motion-to-dismiss stage, courts are to carefully scrutinize ERISA claims, but that inquiry must also be "context-specific" rather than relying on "categorical rule[s]."

– 19 –

*Hughes*, 595 U.S. at 173. Here, the plaintiff has pled facts that the Court must take as true supporting why the collective trusts are a meaningful benchmark. Whether the differences in regulatory schemes justified the failure to switch vehicles is a factual issue that should be resolved at a later stage.

Third, the defendants argue that certain allegations—that the defendants should have offered a mix of target-date funds and collective trusts—are implausible. Dkt. No. 28 at 18–19. The plaintiff alleges that only certain vintages of the target-date funds were more expensive than, and should have been replaced with, collective trusts. *See id.* The plaintiff thus alleges that the Plan should have selected different types of investment vehicles from T. Rowe Price to achieve the mix of investments with the lowest expense ratios. *See* Dkt. No. 39 at 82–83. The plaintiff also pleads that T. Rowe Price does not require plans to choose only mutual funds or collective trusts. *Id.* at 83. The defendants argue that this approach is practically implausible and would increase the Plan's fees. Dkt. No. 28 at 19–20.

At later procedural stages, the Court will be able to consider evidence relevant to the totality of the circumstances—including, for example, whether different investment instruments can be mixed together (rather than offered only as a suite) in practice, whether the alleged comparators are actually indistinguishable from the Plan's investments, and whether the collective trusts were more or less expensive than the Plan's investments in any recent years. At this stage, however, the Court must accept as true the plaintiff's well-pled factual allegations and construe the complaint in the light most favorable to the plaintiff. The Court thus rejects these arguments and declines to dismiss the prudence claim with respect to the target-date funds.

**b.    The Court dismisses the prudence claim with respect to the other mutual funds.**

In addition to alleging that the target-date funds should have been replaced with substantially identical investment trusts, the plaintiff alleges that a group of "single asset class investment options" (the other mutual funds) should have been replaced by comparable, lower-cost funds.  Dkt. No. 39 at 90.  The plaintiff identified his proposed benchmarks with an unidentified "industry[-]recognized software program that uses quantitative methods . . . to find funds that are highly similar to the fund being analyzed." *Id.* at 95.  The plaintiff asserts that his proposed comparators are meaningful benchmarks because his software identified those funds as having "similar investment strategies, similar investment objectives, or similar risk profiles to the Plan's funds."  *Id.* at 97.

The plaintiff also alleges that one common provider of data used to power such software is Morningstar.  *Id.* at 95.  The plaintiff alleges that Morningstar creates classifications, or peer-group assignments, into which funds are grouped with other similar funds "based on their holdings" or "investment styles."  *Id.* at 95–96.  The plaintiff also alleges that the comparators are within the same Morningstar classifications as the Plan's funds, which provides "additional factual support . . . that the lower-cost alternatives have similar investment objectives."  *Id.* at 96–97.  Thus, the plaintiff asserts, his comparators are "comparable" to the Plan's funds but "performed comparably with or better than" the Plan's funds.  *Id.* at 91–92.

These allegations are insufficient to plead that the defendants breached their fiduciary duty of prudence to the plaintiff.  For one, the plaintiff's allegations are conclusory.  Although the plaintiff alleges that the comparators are "similar" to the Plan's holdings because a software program identified them as such, he does not plead any facts

regarding the similarity or identity of the holdings, risk profiles, and investment objectives between the funds.  *See Matney*, 80 F.4th at 1153.

In addition, simply alleging that "cheaper alternative investments with some similarities exist in the marketplace"—as the plaintiff does here—is insufficient to allege that a plan administrator breached its duty of prudence.  *Meiners*, 898 F.3d at 823 (emphasis omitted); *see also Forman*, 40 F.4th at 449.  When a fund is cheaper and has a similar "investment style" or other feature—but is not necessarily equivalent in material respects to a plan's chosen fund—then fiduciaries retain "considerable discretion in choosing their offerings and do not have to pick the lower-cost fund of a certain type" where other factors counsel selecting a different fund.  *Forman*, 40 F.4th at 449.  For example, different investment options have "different aims, different risks, and different potential rewards" on purpose: such differences attract different investors.  *Davis*, 960 F.3d at 485.  Plan administrators are permitted to take such differences and the long-term prospects of an investment into account, so they are not required to pick the cheapest possible fund.  *Id.* at 486; *see also Forman*, 40 F.4th at 449.

Here, the plaintiff has not alleged that the proposed benchmarks have comparable returns, risks, services, and flexibility as compared with the Plan's funds.  *See* Dkt. No. 39 at 90–99.  Instead, the plaintiff has alleged merely that the comparators are "similar" and "performed comparably with or better than" the Plan's funds.  *Id.* at 91–92.  In other words, the plaintiff alleges that "cheaper alternative investments with some similarities exist in the marketplace."  *Meiners*, 898 F.3d at 823 (emphasis omitted); *Forman*, 40 F.4th at 449.  These allegations fail to raise a plausible inference that a prudent fiduciary assessing the Plan's investment would have determined that the Plan's mutual funds were unreasonably

expensive and chosen the plaintiff's proffered comparators instead.  *See, e.g.*, *Forman*, 40
F.4th at 449.

### c.    The Court dismisses the prudence claim with respect to the index funds.

Finally, the plaintiff alleges that certain index funds in the Plan should have been
replaced with funds from other providers that track the same indexes.  As the plaintiff
alleges, index funds are, in general, passively managed funds that track the performance of a
specified market index, such as the S&P 500.  Dkt. No. 39 at 99.  The plaintiff pleads that
the Plan's index funds, offered by Vanguard, are more expensive than "substantially similar
but lower-cost alternative index options" offered by different providers that track the same
market indexes.  *Id.* at 99–101.

The Court dismisses the prudence claim with respect to the index funds.  Unlike the
allegations related to the target-date fund, the plaintiff has "not plausibly [pled] that these
available alternatives were otherwise equivalent to the selected funds."  *Forman*, 40 F.4th at
449.  Although index funds may have the same overarching investment strategy—tracking a
particular market index—there are no facts pled to support that the funds are comparable in
material respects (for example, identical underlying investments and allocations) such that a
prudent fiduciary would have switched funds.  *See id.*  Instead, the plaintiff alleges that the
funds are "substantially similar."  Dkt. No. 39 at 99.  Yet plan administrators "have
considerable discretion in choosing their offerings and do not have to pick the lowest-cost
fund of a certain type where the long-run performance of another fund had the reasonable
prospect of surpassing it."  *Forman*, 40 F.4th at 449 (citation omitted).  Thus, the mere
existence of a cheaper fund does not "create an inference of improper process for selecting"
the chosen funds.  *Id.* (citing *PBGC ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan*

*Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718–19 (2d Cir. 2013)); *see also Matney*, 80 F.4th at

1153 (holding that conclusory allegations that investments are similar, without factual

allegations supporting their comparability, are insufficient).

Relatedly, the plaintiff's allegations effectively amount to an assertion that the

defendants were required to "scour the market to find and offer the cheapest possible fund."

*Davis*, 960 F.3d at 486 (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 n.7 (8th

Cir. 2009)).  Thus, even when taking as true the plaintiff's allegations that the alternatives

are "substantially similar" to the Plan's chosen funds, Dkt. No. 39 at 99, it is not plausible

that the defendants breached their fiduciary duty by failing to find and offer the lowest-cost

fund on the market, particularly when (1) "the expense-ratio differences are small," and

(2) nothing in the complaint suggests that the expense ratios of the chosen index funds—

ranging from 0.02% to 0.04%—were "too expensive in the market generally" or were

"otherwise an imprudent choice."  *Davis*, 960 F.3d at 486 (quoting *Meiners*, 898 F.3d at 823)

(emphasis omitted).  The plaintiff has failed to plausibly allege that the defendants breached

the fiduciary duty of prudence by selecting the Vanguard index funds.  *See id.*

### iii.    The Court dismisses the claim for co-fiduciary liability.

The plaintiff alleges that the defendants, in addition to being liable for their own

alleged breaches of fiduciary duties, are also liable for the breaches of the other.  Dkt. No.

39 at 106–08.  ERISA holds co-fiduciaries liable for the breaches of another fiduciary of the

same plan under various circumstances, including when the co-fiduciary knowingly

participates in a breach of another fiduciary, enables another fiduciary's breach, or has

knowledge of a breach by another fiduciary and fails to make reasonable efforts to remedy

the breach.  29 U.S.C. § 1105(a).

The Court dismisses this co-fiduciary liability claim.  The plaintiff recites the statutory language describing the scenarios in which co-fiduciary liability may apply, *see* Dkt. No. 39 at 107, but he does not allege any facts to support those allegations.  For example, the plaintiff alleges that the defendants "knew of the violations by the other [d]efendants" but provides no facts to support that assertion.  *See id.*  These "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

### iv.    The Court dismisses in part the claim for failure to monitor.

The plaintiff also alleges that the Hess Corporation had a duty to monitor the Investment Committee's performance and is liable for failing to do so.  Dkt. No. 39 at 108–09.  The Fifth Circuit recently wrote that it "has never recognized a theory of ERISA fiduciary liability" for a failure to monitor, although it has not definitively held that no such cause of action exists, either.  *Singh*, 882 F.3d at 150 (quoting *Perez v. Bruister*, 823 F.3d 250, 260 n.10 (5th Cir. 2016)).  However, the Fifth Circuit has recognized in prior cases that liability under ERISA may arise "where the person exercising supervisory authority" over a fiduciary "was in a position to appoint or remove plan administrators and monitor their activities."  *Am. Fed'n of Unions Loc. 102 Health & Welfare Fund v. Equitable Life Assur. Soc. of the U.S.*, 841 F.2d 658, 665 (5th Cir. 1988).  Other courts have recognized such a claim under ERISA based on general principles of trust law.  *See, e.g.*, *Leigh v. Engle*, 727 F.2d 113, 134–35 (7th Cir. 1984) (citing Restatement (Second) of Trusts §§ 184, 224 (1959)).  And in its recent *Perkins* decision, the Fifth Circuit implicitly acknowledged the existence of such a claim when it reversed the district court's dismissal of a monitoring claim and remanded for determination of whether the complaint stated such a claim.  2024 WL 1574342, at *6.

In light of other circuits' recognition, *Perkins*'s acknowledgement, and the lack of any Fifth Circuit precedent barring such a claim, the Court permits the plaintiff's claim for breach of the duty to monitor.  In addition, the complaint includes sufficient factual allegations that the Hess Corporation appointed the members of the Investment Committee and did not evaluate the performance of the Investment Committee or its processes, did not have a system in place for monitoring the Investment Committee's performance, and did not remove members of the Investment Committee.  Dkt. No. 39 at 109.

However, claims for failure to monitor "inherently require a breach of duty by the appointed fiduciary."  *Singh*, 882 F.3d at 150.  Because the complaint fails to state a claim for breach of the duty of prudence as to the other mutual funds and the index funds, the "duty-to-monitor claim[] . . . [also] collapse[s]" as to those alleged breaches of the duty of prudence.  *Id.*  The Court thus determines that the plaintiff has stated a claim for breach of the duty to monitor as it pertains to the target-date funds, but otherwise dismisses the claim.

## 4.    Conclusion

The Court grants the motion to amend (Dkt. No. 39).  The Court also considers the merits of the defendants' motion to dismiss (Dkt. No. 28) as applied to the third amended complaint and grants in part and denies in part the motion to dismiss.  The claims that are dismissed are dismissed with prejudice, as the plaintiff does not request further leave to amend, and there is no indication that—after three tries at amending his complaint—he has not already pled his best case. *See Wiggins v. La. State Univ.—Health Care Servs. Div.*, 710 F. App'x 625, 627–28 (5th Cir. 2017); *see also Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000).

So ordered on March 21, 2025.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE