UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

JOSHUA WAGNER, individually and on behalf of the Hess Corporation Employees' Savings Plan, and all others similarly situated,

Plaintiff,

v.

HESS CORPORATION, et al.,

Defendants.

No. 6:24-CV-004-H

**MEMORANDUM OPINION AND ORDER**

Before the Court is Joshua Wagner's unopposed motion to preliminarily approve the class settlement, conditionally certify the class, appoint class counsel, approve class notice, and schedule a fairness hearing, as well as his brief in support. Dkt. Nos. 113; 114. Wagner and the defendants, Hess Corporation and the Hess Corporation Investment Committee, have entered into a Settlement Agreement and seek Court approval. Dkt. Nos. 106; 114. Collectively, the motions request that the Court (1) preliminary approve the settlement; (2) provisionally certify the class; (3) approve the notice program set forth in the settlement agreement; (4) appoint Wagner as the class representative; (5) appoint Foulston Siefkin LLP and Figari + Davenport LLP as Class Counsel; (5) approve Analytics Consulting, LLC as the settlement administrator; (6) approve the procedures for members to opt out or object to the settlement; (7) approve the claim form; and (8) schedule a final approval hearing.

Having considered the record, the Court grants the motion and approves the Notice of Pendency of Class Action and Proposed Settlement. Dkt. No. 114-1 at 33–40. The Court

further enters an Order Certifying Class for Settlement Purposes in substantially the form attached to Wagner's unopposed motion. *See id.* at 52–62.

**1. Factual and Procedural Background**

The Court previously discussed the factual allegations underlying Wagner's third amended complaint in its order granting in part the defendants' motion to dismiss. Dkt. No. 58. In short, Wagner is a former employee of Hess Corporation and was a participant in the Hess Corporation Employees' Savings Plan, a 401(k) retirement plan. *See* Dkt. No. 39 at 62, 66–67. Hess delegated to the Hess Corporation Investment Committee the responsibility of selecting and monitoring the Plan's investments. *Id.* at 67. The Investment Committee was thus subject to fiduciary duties under ERISA. *Id.* at 69.

Wagner alleges that the defendants breached their fiduciary duty of prudence by failing to replace certain investments selected for the Plan with indistinguishable or similar investments that had lower expense ratios. *Id.* at 76, 78. Because of those breaches, excessive fees caused millions of dollars in losses to the Plan's participants. *Id.* at 78–79.

Wagner sued in this Court in February 2024. Dkt. No. 1. In March 2025, the Court dismissed one of Wagner's claims and permitted him to file a third amended complaint. Dkt. No. 59. In the months that followed, Wagner challenged the dismissal (Dkt. No. 60) and moved to certify a class and appoint class counsel (Dkt. No. 62). The defendants moved for summary judgment. Dkt. No. 88. Trial was set for November 2025. Dkt. No. 27 at 1.

While these motions were pending and one month before trial, the parties notified the Court of their intention to settle their claims on a class-wide basis. Dkt. No. 106. The Court vacated the trial date and future deadlines and ordered the parties to submit a motion

for preliminary approval of the settlement. Dkt. No. 107. Wagner filed an unopposed motion in November 2025. Dkt. No. 108. Due to concerns that the settlement would provide relief to Plan beneficiaries who were not actually injured by the defendants' alleged misconduct, the Court denied the motion without prejudice. Dkt. No. 112. The parties have since agreed to a new class-wide settlement that addresses the Court's concerns. Dkt. No. 114-1 at 2–31. Before the Court is Wagner's second motion for preliminary approval (Dkt. No. 113), which is unopposed.

## 2. Legal Standards

Pursuant to Federal Rule of Civil Procedure 23, "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval. Fed. R. Civ. P. 23(e). When faced with a class proposed to be certified only for settlement, the Court must first ensure that certification would be proper under Rule 23(a) and (b) and then determine whether Rule 23(e)'s settlement requirements are satisfied. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620–22 (1997); *Kostka v. Dickey's Barbecue Rest., Inc.*, No. 3:20-CV-3424, 2022 WL 16821685, at *2 (N.D. Tex. Oct. 14, 2022), *R. & R. adopted*, 2022 WL 16821665 (Nov. 8, 2022). At the preliminary approval stage, the parties must show that the Court will be likely to find that the settlement is fair, reasonable, and adequate, and to certify the class for judgment on the proposal. Fed. R. Civ. P. 23(e)(2).

### A. Class Certification

Class certification involves two components. First, Rule 23(a)'s prerequisite requirements—numerosity, commonality, typicality, and adequacy of representation—must be satisfied. Fed. R. Civ. P. 23(a); *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016).

Numerosity is satisfied where "joinder of all members is impracticable," looking to the number of members, their geographic dispersion, their ease of identification, the nature of the action, and the size of their claims. Fed. R. Civ. P. 23(a)(1); *Ibe*, 836 F.3d at 528 (quoting *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981)). Commonality requires at least "a single common question of law or fact" to the class whose resolution "will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke." *Ibe*, 836 F.3d at 528 (alteration in original) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). A class representative demonstrates typicality when the legal and remedial theories behind his claim are similar with those of the class. *Id.* at 528–29. And adequacy of representation "requires the class representative[] to possess a sufficient level of knowledge and understanding to be capable of 'controlling' or 'prosecuting' the litigation." *Id.* at 529 (*quoting Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 482–83 (5th Cir. 2001)). In addition, Rule 23 contains "an implied prerequisite" that the class must be ascertainable, meaning that the class must be defined in a manner such that the Court can determine who is a member. *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 & n.3 (5th Cir. 2007).

If the prerequisites are satisfied, a court must determine whether the class action satisfies one of the types of class actions set forth in Rule 23(b). Fed. R. Civ. P. 23(b). Here, Wagner seeks certification of a Rule 23(b)(1) class, which requires the Court to find that "prosecuting separate actions by or against individual class members would create a risk" of two scenarios. Fed. R. Civ. P. 23(b)(1). First, the separate actions would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ.

P. 23(b)(1)(A). Second, and in the alternative, there would be a risk of "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual actions or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). "Rule 23(b)(1)(A) takes in cases where the party is obliged by law" or by "practical necessity" "to treat the members of the class alike," such as in utility and riparian-rights cases. *Amchem Prods., Inc.*, 521 U.S. at 614 (internal quotation marks omitted). Rule 23(b)(1)(B), meanwhile, typically includes "'limited fund' cases, instances in which numerous persons make claims against a fund insufficient to satisfy all claims." *Id.*

**B. Settlement Requirements**

If preliminary certification is proper, the Court must next determine whether the settlement should be preliminarily approved under Rule 23(e). For this inquiry, the Court first evaluates the fairness of the proposed terms of the settlement. *McNamara v. Bre-X Mins. Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002). If "the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *Id.*

In the Fifth Circuit, courts traditionally apply a six-fact test, known as the *Reed* test, to determine whether a settlement is fair:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 293 (5th Cir. 2017) (quoting *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)). Further, Rule 23(e)(2) provides specific factors, which largely overlap with the *Reed* test, to determine whether a settlement should be approved.[1] *See* Fed. R. Civ. P. 23(e)(2).

### 3. Analysis[2]

The Court grants the motion for preliminary approval of the settlement. The Court finds that the settlement class satisfies the certification requirements and that the settlement satisfies Rule 23(e) and is likely to be found fair at the final approval stage. The Court also determines that Wagner should be designated as the class representative; that the law firms of Siefkin LLP and Figari + Davenport LLP should be appointed as class and local counsel, respectively; that Analytics Consulting, LLC should be appointed as the settlement administrator; that the procedures for members to opt out or to object to the settlement are proper; that the claim form should be approved; and that a final approval hearing shall be scheduled.

#### A. The settlement class meets the requirements of Rule 23(a) and (b) for certification.

The parties' Settlement Agreement defines the relevant Settlement Class as:

> all persons who participated in the [Hess Employees' Savings] Plan and invested in any of the Challenged Funds at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan and invested in any of the Challenged Funds at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO[3] who

---

[1] These factors were added to Rule 23 in the 2018 amendments but do not "displace any factor" from the Fifth Circuit's test. Fed. R. Civ. P. 23(e)(2) advisory committee's note to the 2018 amendment.

[2] For purposes of this Order, various capitalized terms have the definitions set forth in the proposed Settlement Agreement (Dkt. No. 114-1).

[3] QDRO means "a Qualified Domestic Relations Order within the meaning of 26 U.S.C. § 414(p)." Dkt. No. 114-1 at 7.

> participated in the Plan and invested in any of the Challenged Funds at any time during the Class Period.

Dkt. No. 114-1 at 9. The Class Period "means the period from February 12, 2018, through the date the Preliminary Approval Order is entered by the Court." *Id.* at 5. The term "Challenged Funds" means a certain set of investment funds that lost value during the Class Period and is defined to address the Court's concern that members of investment funds which were either unharmed or gained value would receive relief. *Id.* at 4–5; *see* Dkt. No. 110 at 5–6 (expressing concern over a class including all Plan beneficiaries).[4] The class excludes "[the] Defendants, including the individual members of the Board of Directors of Hess Corporation and the Committee[5] during the Class Period, and their Beneficiaries." *Id.* at 8–9.

The Court, preliminarily and for purposes of settlement only, finds that the Settlement Class satisfies Rule 23(a) and (b)(1)(B). First, the definition provided by the parties is sufficiently definite to satisfy ascertainability. The Court can determine whether someone belongs in the class based on whether he is a person or the Beneficiary of a person who participated in the Plan between February 12, 2018 and the date of this Order. The Notice will be sent to those who are identified by the Plan's Recordkeeper. *Id.* at 11. This definition is "administratively feasible for the [C]ourt" to apply and therefore meets "the

---

[4] According to the parties, five T. Rowe Price funds either benefited or were unharmed from the defendants' alleged misconduct. These are the Balanced, 2005, 2010, 2015, and 2020 funds. Dkt. No. 111 at 3; *see also* Dkt. No. 100 at 17–18. These are not included in the definition of Challenged Funds. Dkt. No. 114-1 at 4–5. But the definition also includes eight Single Asset Funds that Wagner asserts harmed Plan participants. *Id.*; Dkt. No. 111 at 3.

[5] The Committee means "Hess Corporation's Pension Plan Investment Committee, the Employee Benefit Plans Committee, and their predecessors and successors, including the Qualified Plan Investment Committee." Dkt. No. 109-1 at 5.

touchstone of ascertainability." *Kostka*, 2022 WL 16821685, at *8 (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015)).

Numerosity is also satisfied here. A class of "100 to 150 members . . . is within the range that generally satisfies the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). Wagner indicates that this class "includes more than 6,000 members." Dkt. No. 114 at 13. Joinder of over 6,000 individuals in this action is clearly impracticable, is about the typical satisfactory "range," and thus satisfies numerosity. *Mullen*, 186 F.3d at 624.

Next, the class shares common questions of law or fact appropriate for class-wide resolution. The core of Wagner's contentions is that the defendants "breached their fiduciary duty of prudence in retaining various investments in the Plan" instead of switching to other investments that were "substantially the same but less[] expensive." Dkt. No. 114 at 7. These claims focus narrowly on the conduct of the defendants with respect to the Plan as a whole. Wagner "must prove a breach of fiduciary duty and a prima facie case of loss to the plan." *McDonald v. Provident Indemn. Life Ins. Co.*, 60 F.3d 234, 237 (5th Cir. 1995). If he were to prove a breach, the defendants would have to show by a "burden of persuasion" that the class members' losses were "not caused by . . . the breach of duty." *Id.* (quoting *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 917 (8th Cir. 1994)); *LeBoeuf*, 2025 WL 1262414, at *5 (same). The Investment Committee's duty, if established, is one that would "be common to every individual class member's claim." *Kostka*, 2022 WL 16821685, at *7. Each question will result in a common answer that will "drive the resolution" of the ERISA claim. *See Flecha v. Medicredit, Inc.*, 946 F.3d 762, 767 (5th Cir. 2020) (quoting *Dukes*, 564 U.S. at 767). Furthermore, ERISA claims, while they do not "automatic[ally]" qualify for

Rule 23(a)'s commonality requirement, are "quite likely" to do so in the typical case. *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 n.11 (3d Cir. 2009); *McWhorter v. Serv. Corp. Int'l*, 748 F. Supp. 3d 459, 473 (S.D. Tex. 2024) (Eskridge, J.). That is the case here.

Wagner's claims are also typical of the Settlement Class. Wagner and his fellow class members were impacted by the same alleged breach of fiduciary duty, which forms the factual basis for all their claims. *See* Dkt. Nos. 62-2 at 2 (noting Wagner was enrolled in the Plan); 84 ¶ 20 (noting Wagner participated in the Plan during the Class Period). His claims are identical to those of the other class members. Thus, Wagner's claims turn on the same legal theories and facts as the class, and he therefore satisfies typicality. *See Ibe*, 836 F.3d at 528–29.

In addition, Wagner and the proposed class counsel adequately represent the class. Adequacy looks to "whether the putative class representatives are willing and able to take an active role in and control the litigation and to protect the interests of the absentees." *Berger*, 257 F.3d at 479 (internal quotation marks omitted). Courts must consider whether there are conflicts of interest between the representatives and the class. *Id.* at 480.

Here, Wagner and the proposed class counsel have taken an active role in the litigation as demonstrated by their advocacy over the past two-and-a-half years, including repeated amendments to the complaint, challenging the Court's prior dismissal in part, defending against the motion for summary judgment, and working actively to obtain the proposed Settlement Agreement. *See* Dkt. No. 114 at 7–9. There is no evidence of any conflicts between them and the class. Wagner and counsel did not negotiate any side

agreement with the defendants,[6] and the Settlement Agreement is final even if the Court elects to deny counsel's request for attorneys' fees and costs in toto. Dkt. No. 114-1 at 22–23; *see In re Wawa Data Sec. Litig.*, 85 F.4th 712, 725–27 (3d Cir. 2023) (noting the potential conflicts posed by clear-sailing and reverter provisions). The Settlement Agreement only entitles Wagner to the benefits of the class. And while his requested service award of $15,000 will be disbursed from the total $850,000 Gross Settlement Amount, the Court has discretion to reduce that amount if an objection is raised as to its propriety. Dkt. No. 109-1 at 4, 16–17.[7]

The proposed counsel is also experienced. Counsel in this case from Foulston Siefkin are partners at their firm. Dkt. No. 109-2 at 3. In particular, counsel Boyd A. Byers is the chair of that firm's Employment and Labor Law Practice Group and specializes in ERISA claims. *Id.* The other proposed class counsel, Figari + Davenport, is contributing local counsel and as a firm specializes in complex litigation and class actions, including the legal issues pertinent to this case. *Id.* at 4–5.

Finally, the class satisfies Rule 23(b)(1)(B)'s requirement that "prosecuting separate actions by or against individual class members would create a risk of . . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Wagner's claim is a

[6] Wagner indicates that Foulston Siefkin has negotiated a fee-distribution agreement with Stockton & Kandt, LLC, a small Kansas-based firm whose attorneys have not entered an appearance in this case. Dkt. No. 114 at 7 n.2

[7] The Court must consider several factors in relation to a class-representative service award, including the risk to the class representative, time and effort contributed, and any personal benefit conferred as a result of the litigation. *See, e.g.*, *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 306 (S.D. Miss. 2014).

"paradigmatic example" of a Rule 23(b)(1)(B) claim. 2 Newberg and Rubenstein on Class Actions § 4:21 (6th ed.) (quoting *In re Schering*, 589 F.3d at 604). That is because "any recovery 'inures to the benefit of the plan as a whole' and not directly to the aggrieved beneficiary." *Id.* (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985)). Thus, certification is appropriate.

In sum, the Court, preliminarily, and for purposes of settlement only, concludes that the Settlement Class satisfies the requirements of Rule 23(a) and (b)(1)(B).[8]

### B. The proposed Settlement Agreement satisfies Rule 23(e) and will likely be found fair at the final approval stage.

The Court also concludes that the Settlement Agreement should be preliminarily approved because it satisfies Rule 23(e) and the *Reed* factors and will likely be found fair at the final approval stage. Pursuant to Rule 23(e)(2), the Court must consider whether (1) "the class representative[] and class counsel have adequately represented the class"; (2) "the proposal was negotiated at arm's length"; (3) "the relief provided for the class is adequate"; and (4) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). All of these factors support preliminary approval here.

#### i. Wagner and class counsel have adequately represented the class.

First, as previously discussed in the Rule 23(a) analysis, Wagner and his counsel adequately represented the class. Counsel is highly experienced in handling class actions and reached this settlement following their review of discovery materials, after actively litigating a motion to dismiss (Dkt. No. 28), motion to amend (Dkt. No. 60), and motion for

[8] In the alternative, Wagner seeks certification under Rule 23(b)(1)(A). Dkt. No. 114 at 17. Because the Court finds that certification is already appropriate under (b)(1)(B), it does not consider whether certification is appropriate under any other provision of Rule 23.

summary judgment (Dkt. No. 88). Counsel also acted promptly in response to the Court's order questioning the scope of the original proposed Settlement Agreement (Dkt. No. 110) and secured a modified agreement days later. Dkt. No. 111. Wagner's interests are aligned with those of the proposed class as he will largely receive the same benefits from the settlement as them, *see* Dkt. No. 114-1 at 5 (defining Wagner as a Class Member), minus a Class Representative Case Contribution Award not to exceed $15,000 and subject to Court approval. *Id.* at 17–18.[9] And both counsel and Wagner have demonstrated their commitment to this case through their negotiations of the settlement.

**ii. The Settlement Agreement was negotiated at arm's length.**

Second, the Settlement Agreement was negotiated at arm's length. The Court "may presume that a proposed settlement is fair and reasonable, and lacking fraud or collusion, when it is the result of arm's-length negotiations." *Welsh v. Navy Fed. Credit Union*, No. 5:16-CV-1062-DAE, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018) (citing *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007)). Moreover, unless there is evidence to the contrary, the Court presumes that "no fraud or collusion occurred." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010). Again, the parties in this case actively litigated their claims for over two years and up to the eve of trial. The parties aver that they reached this agreement through arm's-length negotiations, and the Court has no evidence to suggest otherwise. Dkt. No. 114-1 at 21

[9] "It is not unusual for a court to make an incentive award to named plaintiffs because of their sacrifices in pursuit of litigation on behalf of the class." *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291 (S.D. Miss. 2014) (internal quotation marks omitted).

**iii. The Settlement Agreement's proposed relief is adequate.**

Third, the proposed relief for the class is adequate. In considering the adequacy of the relief, courts look to (1) the risks and costs of trial and appeal; (2) the effectiveness of the proposed method to process class-member claims and distribute relief; (3) the terms of attorney's fees; and (4) any agreement made in connection with the proposal. Fed. R. Civ. P. 23(e)(2)(C), (3). The risks and costs of trial and appeal include "the complexity, expense, and likely duration of the litigation; the stage of the proceeding and the amount of discovery completed; the probability of plaintiff's success on the merits; and the range of possible recovery." *Singing River*, 865 F.3d at 293 (cleaned up) (quoting *Reed*, 703 F.2d at 172); *Kostka*, 2022 WL 16821685, at *11.

This litigation presented significant risk to the class members. "ERISA litigation is notoriously complex." *Blackmon v. Zachary Holdings, Inc.*, No. SA-20-CV-988, 2022 WL 3142362, at *5 (W.D. Tex. Aug. 5, 2022). At length, the parties in this case disputed whether summary judgment was warranted on Wagner's two theories of recovery. The first theory was that the defendants ought to have mixed and matched individual funds to maximize benefit to the beneficiaries. *See* Dkt. No. 100 at 22. The defendants urged that this was a "novel" way of managing funds and would not suffice to allege a breach of fiduciary duty. Dkt. No. 89 at 40. The second theory asserted that the defendants ought to have replaced their mutual funds wholesale, which would have benefited the vast majority of beneficiaries, but would have harmed 10%. *See* Dkt. No. 102 at 7–8. The defendants urged that the wholesale theory had been improperly raised at a late stage of litigation and, regardless, would fail on the merits. *See* Dkt. No. 102 at 8–9 (citing *Johnson v. Thibodaux City*, 887 F.3d 726, 736 (5th Cir. 2018)).

Because the motion for summary judgment (Dkt. No. 88) was ripe for review and trial was weeks away, two points are relevant. One, the parties had completed discovery, and thus "the parties [had] a good understanding of the likely outcomes and their expected value." *Singing River*, 865 F.3d at 300. Two, the parties undoubtedly recognized that the Court planned to resolve the motion imminently. Had the Court granted preliminary class certification and granted summary judgment, it would have precluded class members from recovery across the board. If the case survived summary judgment and proceeded to bench trial seeking class-wide recovery as intended (*see* Dkt. No. 27), that would still leave open the possibility of a finding by this Court that the defendants had complied with their fiduciary duties. And even if the Court had granted summary judgment without certifying the class, a judgment in favor of the defendants would have presented unfavorable authority for other individual plaintiffs or putative class actions going forward. Said differently, the summary-judgment and trial stages of an ERISA suit present "significant risks and expenses" with "uncertain outcomes and the possibility of lesser recovery to Plan participants." *Blackmon*, 2022 WL 3142362, at *4.

As for the range of possible recovery, while it is not fully evident what the class members would obtain if they succeeded at trial, Wagner estimates that "the Settlement Amount represents nearly 70% of the total damages that [he] could currently obtain at trial" on behalf of the class. Dkt. No. 114 at 22. As Wagner notes, and as *Blackmon* explains, "a recovery between 14[%] and 24% of [the class's] total estimated losses 'exceeds many recoveries received in other class action cases relative to estimates of recovery.'" *Id.* at 22–23 (quoting *Blackmon*, 2022 WL 3142362, at *4 (collecting cases)). Given that the settlement agreement also includes funds subject to a claim previously dismissed by the

Court,[10] seventy percent is highly beneficial. This, too, points to the fairness and adequacy of the Settlement Agreement.

As for the effectiveness of the method of processing claims and distributing relief, this also supports approval. "Current Participants will have their Plan accounts automatically credited," and the remaining class members only need to fill out a claim form and provide documentation as necessary. Dkt. No. 114 at 10; *see* Dkt. No. 114-1 at 42–44, 48–50. This process—submitting a claim form to be considered by an experienced claims administrator—favors approval. *Kostka*, 2022 WL 16821685, at *12.

The attorneys' fees provision also favors approval. It provides that Class Counsel "intends to seek an award of attorneys' fees in an amount not to exceed one-third (33 1/3%) of the Gross Settlement Amount, plus all reasonable litigation costs and expenses advanced and carried out by Class Counsel in connection with their prosecution of this Class Action," also to be recovered from the Gross Settlement Amount. Dkt. No. 144-1 at 18–19. However, "[t]he Settlement Agreement is not contingent on Court approval of any fees, costs and expenses, or class-representative service awards that may be requested." Dkt. No. 144 at 12. Thus, as noted above, the class will still receive an award even if the Court elects to deny fees to Class Counsel and Wagner in toto. And there are no reverter or clear-sailing provisions, either. *See Wawa*, 85 F.4th at 725–27. This factor also supports finding that the Settlement Agreement is fair, reasonable, and adequate. *Spegele v. USAA Life Ins. Co.*, No. 5:17-cv-967-OLG, 2021 WL 4935978, at *6 (W.D. Tex. Aug. 26, 2021).

[10] In March 2025, the Court dismissed certain claims relating to Single Asset Funds with prejudice. Dkt. No. 58. Wagner soon filed a Motion to Revise, Dkt. No. 60, which was pending at the time of the parties' settlement.

The final consideration regarding the adequacy of the settlement is any agreement covered by Rule 23(e)(3). The parties have not identified any such agreements, minus a "pre-existing agreement between Class Counsel" and a Kansas firm that "does not impact the amount of the Net Settlement Amount." Dkt. No. 114 at 12 n.2; *supra*, n.6. So, this factor does not weigh against approval.

Accordingly, these various considerations demonstrate that the Settlement Agreement provides adequate relief to the class members and therefore favor approval.

**iv. The Settlement Agreement treats class members equitably.**

The final consideration stated in Rule 23(e) regarding a settlement's fairness, reasonableness, and adequacy is whether it "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). This factor also supports preliminary approval. Equitable treatment does not require equal treatment of class members. *Kostka*, 2022 WL 16821685, at *13. Instead, it is proper for a class member's recovery to depend on the strength of his claim. *Id.* Under the Settlement Agreement, each member will receive "his or her Challenged Funds aggregate balance" divided by the aggregate balance for all payees and multiplied by the Net Settlement Amount. Dkt. No. 144-1 at 47. In other words, each class member will receive an amount representative of their losses and reduced to ensure that every member receives some benefit out of the Net Settlement Amount. *Id.* While the amount of recovery by each class member will differ based on those expenses, these distinctions based on documented losses properly account for the strength of their claims and show equitable treatment of the members. *Kostka*, 2022 WL 16821685, at *13.

In sum, applying the required factors, the Court determines that they all weigh in favor of preliminarily approving the Settlement Agreement and that the settlement will likely be found fair at the final approval stage.

**C. Wagner's remaining requests are proper.**

Finally, the Court turns to Wagner's remaining requests: to (1) approve the notice program set forth in the settlement agreement; (2) appoint Wagner as the class representative; (3) appoint Foulston Siefkin LLP and Figari + Davenport LLP as Class Counsel; (4) approve Analytics Consulting, LLC as the settlement administrator; (5) approve the procedures for members to opt out or object to the settlement; (6) approve the claim form; and (7) schedule a final approval hearing. The Court finds that these requests are proper and grants them.

As previously discussed, Wagner and his attorney adequately represent the class and have demonstrated their commitment to this case. Accordingly, Wagner is appointed as Class Representative for the Settlement Class and Foulston Siefkin LLP and Figari + Davenport LLP are appointed as Class Counsel.

The proposed settlement administrator, Analytics Consulting, LLC, is also approved. While the motion fails to discuss Analytics Consulting's experience in administering settlements, the Court observes that Analytics Consulting has served as settlement administrator on several cases before other Judges of the Northern District of Texas. *See, e.g.*, *Seidner v. Kimberly-Clark Corp.*, No. 3:21-CV-867, Dkt. No. 117 (N.D. Tex. Mar. 10, 2025) (Lindsay, J.). Analytics Consulting also served as administrator in a large 401(k) class action involving Walgreens. Carol E. Potaczek, *Judge OKs Walgreens' $14 Million Settlement Offer in 401(k) Litigation*, 36 Westlaw J. Emp't No. 9 (Nov. 16, 2021)

(discussing *Allegretti v. Walgreen Co.*, No. 19-CV-5392, 2021 WL 5119759 (N.D. Ill. Nov. 1, 2021)).

The Court also approves the notice plan. Under Rule 23(c)(2)(A), "the [C]ourt may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A). But "Rule 23 . . . does not specify any notice requirement for 23(b)(1)(B) actions beyond that required by subdivision (e) for settlement purposes." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 n.5 (5th Cir. 2010). To that end, the Court must only "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).

The Court finds that the notice plan satisfies Rules 23(c)(2)(A) and (e). The proposed notice provides details about the lawsuit, informs prospective Class Members about why they may qualify as Class Members, indicates where to access the terms of the settlement, summarizes the prospective Class Members' options (including their ability to object and their non-excludability), and outlines procedural steps regarding how to object or submit a claim for a settlement payment. *See* Dkt. No. 114-1 at 33–40. It thus "'fairly apprise[s] the prospective members of the class of the terms of the settlement and the options that are open to them,' and provide[s] them with 'sufficient information for them to make a rational decision whether they should intervene in the settlement approval procedure.'" *Stott v. Cap. Fin. Servs., Inc.*, 277 F.R.D. 316, 342 (N.D. Tex. 2011) (citation modified) (quoting *Maher v. Zapata Corp.*, 714 F.2d 436, 451 (5th Cir. 1983)).

Likewise, the Court approves the parties' claim form. The form clearly states the information that a Former Participant must provide in order to obtain relief under the Settlement Agreement and is written in a manner that is easily understandable. Dkt. No.

114-1 at 42–44. Further, many portions of the form are simple for members to fill out because it includes check-box-style responses. *See id.*

The Court approves the objection process, which provides sufficient time for Class Members to object if they so choose. *See, e.g.*, *Schwartz v. TXU Corp.*, No. 3:02-CV-2243 (lead case), 2005 WL 3148350, at *11 (N.D. Tex. Nov. 8, 2005) (finding 62 days between mailing of notices and scheduled fairness hearing sufficient); *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 429–30 (5th Cir. 1977) (four weeks).

The Court also approves the request for a stay of litigation. A stay is appropriate in the context of a limited-fund action as class members cannot opt out and courts regularly "enjoin[] other legal proceedings to preserve the limited assets that would be available to all class members." *Stott*, 277 F.R.D. at 336–38.

Finally, the Court sets the fairness and final approval hearing for Wednesday, February 17, 2027, at 9:00 a.m. in the United States District Court, Courtroom 216, 33 East Twohig Avenue, San Angelo, Texas.

**4. Conclusion**

In light of the foregoing, the Court grants Wagner's class-certification and preliminary-approval motion. Dkt. No. 113. An order setting forth the relief requested (*see* Dkt. No. 114-1 at 52–62) shall issue separately.

So ordered on October 9, 2026.



JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE